## SMITH v. GRIFFIN et al.

No. 2789.

Court of Civil Appeals of Texas. Beaumont. Dec. 6, 1935.

Rehearing Denied Dec. 18, 1935.

David E. O'Fiel, of Beaumont, for appellant.

Llewellyn & Dougharty, of Liberty, for appellees.

O'QUINN, Justice.

On May 8, 1934, appellant, Smith, filed suit in the district court of Liberty county against appellees in trespass to try title to 2 certain acres of land, alleging that on January 1, 1934, he was the owner and in possession of said land, and that on said date appellees unlawfully entered upon same and dispossessed him thereof, to his damages in the sum of $1,000. On July 11, 1934, appellant filed his second amended original petition in lieu of his original petition, and alleged that on January 1, 1928, he was the owner and in possession

of 2 acres of land, a part of the James Martin survey in Liberty county, Tex., describing same by metes and bounds and that appellees on said date unlawfully entered upon said land and dispossessed him thereof to his damage in the sum of $1,000.

Appellant's second amended petition is long and considerably involved, and we shall not undertake to state the substance of all of it, but only the substance of those portions we deem essential to a proper understanding and determination of the case. Appellant alleged that on about January 1, 1928, he acquired the land in controversy by parol sale from S. S. Wickliff and wife for a consideration of $200, to be paid by him at some time in the future, he to receive a deed to the land when he paid the $200; that Wickliff and wife agreed for him to take possession of the land and to make improvements thereon, he in the meantime to pay "something" for the use of the land; that he did, after his verbal agreement to buy the land, take possession of same and did make valuable and permanent improvements thereon; and that "prior to the filing of this suit (May 8, 1934) he completed his purchase (paid the purchase price of $200.00) and received (April 14, 1934) a deed from S. S. Wickliff and his wife therefor"; and that since about May 1, 1928, he had resided on the land with his family as his home.

He further alleged that about January 22, 1934, appellees F. H. Griffin and H. Layl, "pretending" to have some sort of lease or interest in the 2 acres of land, brought a forcible detainer suit in the justice court of Liberty county against him for possession of said premises; that he had not "attorned" to said Griffin or Layl, or any one for said premises, and that he had not since he verbally bought same from S. S. Wickliff and wife on about January 1, 1928, let or leased same to any one, but had himself and family at all times occupied the land as his home; that he appeared and answered in said forcible detainer suit, pleading not guilty, and asserting his title to the land, but that on trial of same he was by a jury found guilty of forcibly detaining and holding possession of said premises, and judgment against him was so ordered; that he appealed said judgment to the county court of said county where he again asserted his title to said land by virtue of his verbal agreement with S. S. Wickliff and wife to purchase same and of his possession of same

under said verbal purchase, and again pleaded not guilty, but was again found guilty of forcible detainer by a jury, and judgment there entered against him; that he filed motion for a new trial, which was overruled, and, because Griffin and Layl had not asked for judgment for rents, and there being no judgment from which he could further appeal, a writ of possession was issued and placed in the hands of the sheriff of Liberty county for execution to dispossess him, which said writ the sheriff was threatening to execute and eject him from his property and home.

He further alleged that neither the justice court nor the county court of Liberty county had jurisdiction to hear and determine the forcible detainer suit against him, for in that he asserted fee-simple title to the land and was in possession of same, and said courts had no jurisdiction to try the issue of title, and therefore the judgments in said courts convicting him of forcible detainer were void. He alleged that appellees, in bringing and prosecuting said forcible detainer suit against him, were actuated by malice, and same was done with the intention and for the purpose of harassing and injuring him and causing him financial loss, wherefore he was entitled to recover of them $2,500 as exemplary damages, and that, as a result of such litigation, he would suffer actual damages in the sum of $500, and that the rental value of the premises was $500 per year, for which damages and rents he prayed judgment.

Because of the premises, appellant alleged that he was threatened with dispossession of his property and home, and that he was without any other remedy, and prayed for an injunction restraining appellees from further prosecuting said ouster proceedings until the determination of this suit. The injunction was granted as prayed for.

Appellees, defendants below, answered by general demurrer, several special exceptions, general denial, and a plea of not guilty.

The court overruled appellees' general demurrer and one of the special exceptions (relating to the forcible detainer suit as plead by appellant), but sustained the special exception against the allegations as to exemplary damages, to which appellant excepted. The case was then tried to a jury, but, after all parties had closed their evidence and rested, the court with-

drew the case from the jury and rendered judgment for appellees. The judgment rendered by the court contains this finding: "The court finding from the undisputed evidence that the plaintiff is not entitled to prosecute this cause in trespass to try title, said cause being premature in this: That the defendants, F. S. Griffin and H. Layl, under the undisputed evidence, * * * have and hold a good, valid and subsisting lease covering the land and premises in controversy emanating from S. S. Wickliff and his wife, Epheme Wickliff, the agreed common source of title of plaintiff and defendants, prior to the acquisition by the plaintiff of title to the reversion after the termination of the leasehold estate existing in and owned by the defendants, and that the defendants are, therefore, entitled to the possession of said land and premises, and the plaintiff, consequently, shows no right of possession in himself," and accordingly dismissed the appellant's suit as premature. This appeal is from that judgment.

We shall not discuss the assignments and counter assignments presented by the parties, but content ourselves with a statement of the undisputed facts disclosed by the record.

By agreement S. S. Wickliff and his wife, Epheme Wickliff, were the common source of title. They owned a tract of 96 acres of land, the west line of which was the east line of a 10-acre tract purchased by William Smith, appellant, from J. F. Richardson, Jr., on March 26, 1928. Smith erected some tourist cabins on the Richardson 10 acres, and on May 22, 1933, leased said 10 acres and the improvements thereon, including ten tourist cabins, to F. S. Griffin and H. Layl, appellees herein. Some time after March, 1928 (the exact date is not shown), appellant, Smith, made an oral agreement to buy 2 acres of land from S. S. Wickliff and his wife, adjoining the 10-acre tourist tract on the east, the deed to him for the land to be executed when he paid for the land. He got permission from Wickliff and wife to occupy the land, promising to pay for the use of it until he paid the purchase price of $200. He took possession and made some improvements, the nature of which and the value we do not deem to be material, in view of the conclusion we have reached.

February 20, 1930, S. S. Wickliff and wife executed a lease of the 96 acres (which included the 2 acres in controversy) adjoining the 10-acre tourist tract on the east to E. W. Pickett (trustee for the use of the Liberty Golf Club) for ten years. This lease was duly recorded. Under this lease the golf club immediately took possession of the 96 acres, improved and used same. At this time appellant, Smith, had not paid for the 2 acres he had agreed to buy, and had no muniment of title of any character to same.

On December 30, 1933, the Liberty Golf Club, with the written consent of its lessors, S. S. Wickliff and his wife, Epheme Wickliff, assigned to F. S. Griffin and H. Layl, appellees, its lease from S. S. Wickliff and wife of date February 20, 1930, to and covering 5 acres out of the 96 acre tract; said 5 acres being immediately east of and adjoining the 10-acre tourist tract. In the instrument witnessing the consent of Wickliff and wife to the assignment by the Liberty Golf Club of its lease to the extent of 5 acres to Griffin and Layl, it was stipulated that Griffin and Layl were to pay $25 on the first day of each year during the life of the lease to Wickliff and wife in consideration of their consent to the assignment of said lease covering said 5 acres, and that such consideration, when paid by Griffin and Layl, should be credited on the rental due on the lease of the whole 96 acres. This lease was duly recorded. The 5 acres covered and included the 2 acres claimed by appellant. At this time appellant had not paid S. S. Wickliff and wife for the land nor did he have any muniment of title of any character to same.

On January 26, 1934, after proper demand for possession of the 5 acres, F. S. Griffin and H. Layl filed a forcible detainer suit in the justice court of Liberty county against appellant, Smith, with full and proper allegations to support such suit, praying judgment for and writ of possession of said premises. Trial on February 10, 1934, resulted in judgment convicting appellant of forcible detainer. He appealed this judgment to the county court of Liberty county, where, on April 30, 1934, he was again convicted of forcible detainer, and judgment rendered against him, and in favor of Griffin and Layl with award of writ of restitution. The writ was issued, and, pending its execution, appellant filed this suit.

April 14, 1934, appellant paid to S. S. Wickliff and his wife the $200 he had agreed with them to pay for the 2 acres

of land, and received from them deed thereto, the deed reciting that the 2 acres was a part of the 96-acre tract leased to E. W. Pickett (trustee for the use and benefit of the Liberty Golf Club) on February 20, 1930, and referring to the record of said lease. On May 8, 1934, appellant filed this suit in trespass to try title to said land and for injunction to restrain the execution in favor of Griffin and Layl and against appellant of the writ of possession awarded them in the county court in the forcible detainer case.

It is seen that the only claim of appellant to the 2 acres of land prior to April 14, 1934, when he received his deed, was that he had an oral agreement with the owners to buy the land, he to receive deed to same at such time in the future when he paid the consideration of $200. He occupied the land for some five years and never offered payment. This though he knew that the golf club had leased the tract including it and were in possession of the leased tract using it. Under the law, the golf club, with the consent in writing of its lessors, had the right to assign its lease to the 96-acre tract or any part of it. With this consent said club did assign its lease to the extent of 5 acres on the west of the 96-acre tract to appellees, which 5 acres covered the 2 acres claimed by appellant. At this time appellant had not secured deed to the 2 acres. Appellees, operating the 10-acre tourist camp which they had leased from appellant and which with the tourist cabins thereon was immediately adjoining the 5 acres leased by them from the golf club, desiring possession of said 5 acres, demanded possession of appellant, and, being denied, brought forcible detainer proceedings and secured judgment against appellant for same.

This is not a contest of appellant's title which he now holds, but a contest of the right of possession of the land. As appellees had and have a perfectly valid and subsisting lease to the land obtained by them prior to appellant's securing deed to the land, which lease has not expired, they are entitled to possession of the land by virtue of their said lease until same expires or is terminated by law for some good and lawful reason.

But appellant insists that, as he had an oral agreement with the owners of the land to purchase same, some eighteen months or two years before the golf club lease was executed, and as he did on April 14, 1934, pay for the land and got a deed thereto, that when he made the payment and received his deed, his title to the land evidenced by the deed related back to and took effect and vested title in him to the land as of the date of his oral agreement to buy the land. After careful consideration of this contention and thorough search of the authorities, we are not able to find where any such question has been presented to or decided by any court. Its novelty is interesting and search for precedent sustaining it engaging, but we are not able to agree with appellant, and so overrule the assignment.

As appellees had possession of the premises by virtue of a valid and subsisting lease before appellant acquired title to the land, they were entitled to possession under their lease, and appellant's suit was prematurely brought.

The judgment is affirmed.